# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| MISSOURI BEVERAGE COMPANY, INC, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 2:10-cv-04113-NKL<br>)<br>) |
| SHELTON BROTHERS, INC., | )<br>) |
| Defendant. | ) |

## ORDER

Plaintiff Missouri Beverage Company, Inc. ("MoBev"), has sued Defendant Shelton Brothers, Inc. ("Shelton"), for violation of the Missouri franchise law. Pending before the Court are cross-motions for summary judgment [Docs. ## 35, 37]. For the following reasons, the Court DENIES MoBev's motion for partial summary judgment [Doc. # 37] and GRANTS Shelton's motion for summary judgment [Doc. # 35].

## I. Factual Background[1]

MoBev is a Missouri corporation with its principal place of business in St. Louis, Missouri. It is a distributor of spirits, wines, beers, juices, and soda in Missouri. Shelton is a Massachusetts corporation, with its principal place of business in Belchertown,

---

[1] The Court has considered the parties' statements of undisputed fact which are supported by evidence. In considering each party's motion, the Court has drawn all inferences in favor of the non-movant.

1

Massachusetts. It is in the business of selling artisan beers from around the world. In 2004, Shelton and MoBev entered into an oral agreement, the precise terms of which are in dispute. Both parties agree, however, that MoBev could purchase and be supplied beer from Shelton; MoBev was not obligated to order any particular amount of beer from Shelton, nor was Shelton required to supply any particular amount of beer. In subsequent letters from 2004 through 2008, Shelton appointed MoBev as the distributor of more of its products. Both parties agree that MoBev had the right to offer, sell, and distribute Shelton's imported beers within Missouri. During the calendar years 2006-2009, MoBev placed beer orders with Shelton, which Shelton filled.

In October of 2008 or 2009, MoBev conducted one sampling event oriented around the beers imported by Shelton and that of one other importer. [Doc. # 43-10, at 22:2-7]. MoBev also conducted another sampling event where the beers imported by Shelton were focused on more than any other supplier. [Doc. # 43-10, at 22:20-22]. On August 8, 2008, Shelton had sent an email to MoBev and other distributors thanking them for their work to build Shelton's brands of imported beers, and outlining a uniform policy where Shelton would refund a calculated amount in the form of a credit against future invoices for products used for sampling.

MoBev kept some of Shelton's products in stock in MoBev's warehouses along with the products of other suppliers. [Doc. # 43-10, at 32:35-33:1-9]. The parties never discussed MoBev's use of Shelton's name in any of its literature, but Shelton testified that MoBev "can always use our name if they want to." [Doc. # 43-6, at 74:11-17]. Shelton provided sales

materials, including logos for its imported beers, to MoBev, intending for the distributors to use those items in order to sell Shelton's brands. MoBev used those materials and talked with retailers about the products offered by Shelton. However, MoBev did not believe that it was obligated to develop Shelton, and MoBev and its sales representatives did not focus on developing Shelton.

MoBev's gross annual sales in Missouri of all alcoholic beverage products for the calendar years 2006 – 2009 were as follows:

- 2006 - $7,507.784.00
- 2007 - $12,230,783.00
- 2008 - $11,848.321.00
- 2009 - $13,129,504.00

MoBev's annual sales of Shelton's products for the calendar years 2006 through 2009 were as follows:

- 2006 - $56,153.00
- 2007 - $75,407.00
- 2008 - $136,954.00
- 2009 - $139,406.00

For the calendar years 2006 – 2009, the percentage of sales of Shelton's beer to MoBev's gross annual sales of all alcoholic products were as follows:

- 2006 – less than 1% ($56,153.00 divided by $7,507,784.00)
- 2007 – less than 1% ($75,407.00 divided by $12,237,083.00)
- 2008 – 1% ($136,954.00 divided by $11,848,321.00)
- 2009 – 1% ($139,406.00 divided by $13,129,504.00)

In January 2010, Shelton stopped providing products to MoBev. MoBev brought the instant suit, claiming that Shelton violated Missouri franchise law when it unilaterally

3

terminated their relationship.

**II.	Discussion**

The primary issue before the Court is whether the business relationship between MoBev and Shelton was that of franchisor-franchisee under Missouri law. For the following reasons, the Court finds that it was not.

**A.	Criteria for Demonstrating a Liquor Franchise under Missouri Law**

As it pertains to Missouri franchise law, Mo. Rev. Stat. § 407.400 defines "franchise" as follows:

> As used in sections 407.400 to 407.420:
> "Franchise" means a written or oral arrangement for a definite or indefinite period, in which a person grants to another person a license to use a trade name, trademark, service mark, or related characteristic, and in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise, including but not limited to a commercial relationship of definite duration or continuing indefinite duration, between a "wholesaler", such wholesaler being a person as defined in this section, licensed pursuant to the provisions of chapter 311, RSMo, to sell at wholesale, intoxicating liquor, as defined in section 311.020, RSMo, to retailers, duly licensed in this state, and a "supplier", being a person engaged in the business as a manufacturer, distiller, rectifier or out-of-state solicitor whose brands of intoxicating liquor are distributed through duly licensed wholesalers in this state, and wherein a wholesaler is granted the right to offer, sell, and distribute within this state or any designated area thereof such of the supplier's brands of intoxicating liquor, or all of them, as may be specified; except that, the term "franchise" shall not apply to persons engaged in sales from warehouses or like places of storage, other than wholesalers as above described, leased departments of retail stores, places of original manufacture, nor shall the term "franchise" apply to a commercial relationship that does not contemplate the establishment or maintenance of a place of business within the state of Missouri. As used herein "place of business" means a fixed, geographical location at which goods, products or services are displayed or demonstrated for sale . . . .

4

Mo. Rev. Stat. § 407.400.1.

This definition contains the following language which was in the original franchise legislation:

> "Franchise" means a written or oral arrangement for a definite or indefinite period, in which a person grants to another person a license to use a trade name, trademark, service mark, or related characteristic, and in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise,

but also contains language added by the Missouri legislature in 1975 that references liquor franchises specifically:

> including but not limited to a commercial relationship of definite duration or continuing indefinite duration, between a "wholesaler", such wholesaler being a person as defined in this section, licensed pursuant to the provisions of chapter 311, RSMo, to sell at wholesale, intoxicating liquor, as defined in section 311.020, RSMo, to retailers, duly licensed in this state, and a "supplier", being a person engaged in the business as a manufacturer, distiller, rectifier or out-of-state solicitor whose brands of intoxicating liquor are distributed through duly licensed wholesalers in this state, and wherein a wholesaler is granted the right to offer, sell, and distribute within this state or any designated area thereof such of the supplier's brands of intoxicating liquor, or all of them, as may be specified . . . .

The parties contest whether the criteria outlined in the specific definition are the only requirements that need to be satisfied to demonstrate the existence of a franchise in the liquor distribution industry, or whether the criteria from both the general and specific definitions must be met.

The Court interprets the Missouri franchise statute in accordance with its plain language. A plain reading of the statute does not carve out a separate definition of "franchise" for the relationship between two companies that sell beer. Rather, the 1975

amendment that references the liquor industry makes it clear that the statute did indeed apply to such relationships in the liquor industry– that is, the franchise law applied equally to certain business relationships based on the sale of beer or other liquor as it did in other industries. This is because the statute uses the word "including" after the general definition of "franchise" as opposed to "except" or some other language that would denote that liquor sales relationships were to be analyzed differently.

This view is supported by *Architectural Lighting Co. v. General Elec. Co.*, 886 S.W.2d 166, 168 (Mo. Ct. App. 1994), where the court discussed the Missouri Supreme Court's analysis of the statute in *Brown-Forman Distillers Corp. v. McHenry*, 566 S.W.2d 194 (Mo. 1978) (en banc). The court in *Architectural Lighting* summarized the *McHenry* Court's conclusion that the 1975 amendment "added to the definition of franchise a clause which defined 'wholesaler' and 'supplier' as being persons in the liquor industry. . . . [and] added § 407.413 RsMo Supp. 1975, which gave additional protection to persons holding franchises in the liquor industry." Thus, any added protection given to franchisees in the liquor industry arose due to § 407.413, as opposed to any additional protection afforded by some alleged change to the definition of "franchise" as applied to the liquor industry.

The Court's view is also supported by *High Life Sales Co. v. Brown-Forman Corp.*, 823 S.W.2d 493 (Mo. 1992) (en banc). There, the issues before the Missouri Supreme Court concerned the enforcement of a forum selection clause and whether § 407.413 of Missouri franchise law was applicable to the case. Because the protections provided to franchisees under § 407.413 turned on the definition of "franchise" in § 407.400, the Court undertook

6

an analysis of that statute. The Court stated: "This definitional section . . . contains both an original, general definition of 'franchise,' applying to all types of businesses and not limited to liquor franchises," and "[t]he statute first contains a general definition of 'franchise' applicable generally to all types of businesses." *Id.* at 500. Thus, the Court twice emphasized that the general definition was applicable to all types of businesses. Moreover, that the Court stated that the general definition was "not limited to liquor franchises" acknowledges that the general definition is applicable to liquor franchises as well as other businesses.

The Missouri Supreme Court, in *High Life*, also explained that § 407.400 included a "specific definition added by the legislature . . . to specifically include liquor franchises," and a "specific definition of liquor distribution agreements that are included [in the general definition]. The latter definition is in terms of the parties that the agreement must be between (a 'wholesaler' and a 'supplier') and the type of products that must be distributed under such a liquor distribution agreement." *Id.* at 500-501. This Court understands the Missouri Supreme Court's opinion to mean that certain business relationships in the liquor industry are not precluded from being deemed a franchise.

MoBev argues that the Missouri Supreme Court's holding in *High Life* actually stands for the opposite proposition–that business relationships can be deemed a "liquor franchise" if they satisfy only the criteria identified in the 1975 amendment. MoBev points to the chart provided in the opinion that dissects the statutory definition of "franchise," where "liquor franchise defined" is written next to the language added in 1975. *Id.* at 501. MoBev also

7

points out that the Missouri Supreme Court only applied a portion of the definition when analyzing whether the distributorship agreement between the parties was controlled by Missouri franchise law, §§ 407.400-420, implying that only that language controlled.

While these observations are accurate, they do not support the proposition that the 1975 amendment created a unique definition of franchise applicable only to the liquor industry. First, the Court finds more persuasive the Supreme Court's textual discussion of the statute, as opposed to a short-hand reference in its chart. The textual discussion clearly states that the general definition is applicable to "all types of businesses." Second, the Missouri Supreme Court limited its analysis to the 1975 amendment because the controlling issue before the Court was "whether the product distributed under the agreement in question must be 'spiritous liquor and wine containing alcohol in excess of five percent by weight,'" *id.* at 502, a phrase which was part of the 1975 amendment. In its opinion, the Missouri Supreme Court additionally explained that its inquiry was limited "[b]ecause of the respective concessions by the parties, this issue [of whether the distribution agreement between the parties is covered by §§ 407.400-420] was decided by the trial court and must be decided by this Court as a matter of law upon the parties' respective motions for summary judgment." *Id.* at 500. As noted by the Missouri Court of Appeals, Brown-Forman's complaint regarding the trial court's interpretation of Missouri franchise law was that the court "erred in granting summary judgment to High Life because § 407.413, RSMo 1986, does require a minimum alcoholic content of 5% alcohol by weight and the product in question does not meet that threshold." *High Life Sales Co. v. Brown-Forman Corp.*, No.

8

WD 43234, at 1 (Mo. Ct. App. Dec. 18, 1990). Thus, the Missouri Supreme Court confined its analysis to the language in the 1975 amendment because it was the only issue disputed.

This reading of *High Life* is not inconsistent with the Missouri Supreme Court's prior opinion in *McHenry*. In that case, the Court stated that the relevant portion of the 1975 amendment "changed the definition of 'franchise' so as to explicitly include wholesalers and suppliers or distillers of spirituous liquors." *McHenry*, 566 S.W.2d at 195. This may render the opinion to appear to stand for the proposition that the specific portion of the franchise definition should solely be applied to beer distributorships. However, the Court went on to concur with the trial court that the "agreements these plaintiffs have with various wholesalers are franchises within the meaning of these statutes," and supported this statement only with citations to two cases, where the facts of both included the use of service marks. *Id.* at 196. *See, e.g.*, *Carlo C. Gelardi Corp. v. Miller Brewing Co.*, 421 F. Supp. 233, 236 (D.N.J.1976) (plaintiff was granted privilege of displaying defendant's trademarks and service marks in connection with the sale of defendant's beer); *Globe Liquor Co. v. Four Roses Distillers Co.*, 281 A.2d 19, 20 (Del. 1971) (summarizing Delaware franchise law and stating that the parties were subject to it because they sold trademark or trade name products). Thus, although some language in *McHenry* might suggest that liquor franchises are determined by a separate definition of "franchise," the reasoning of the Missouri Supreme Court indicates that the original definition equally applies to liquor franchises because the use of service marks lies only in the original definition.

MoBev also cites to *ABA Distributors, Inc. v. Adolph Coors Co.*, 542 F. Supp. 1272,

1289 (W.D. Mo. 1982), to show that any commercial relationship between a liquor supplier and wholesaler is sufficient to create a franchise. While that opinion stated that the Missouri franchise statute was applicable to a beer distributorship, that conclusion does not resolve this Court's inquiry. That the statute is applicable simply means that should a beer distributorship satisfy the criteria outlined in the statute, that beer distributorship would not be precluded from being deemed a franchise under the statute.

The Court also acknowledges that United States District Judge Howard Sachs of the Western District of Missouri issued an order in *Missouri Conrad Liquor Co. v. Brown-Forman Corp.*, No. 89-0141-CV-W-6, at *1 (W.D. Mo. Mar. 26, 1990), stating that the Missouri franchise law applied to relationships between wholesalers and suppliers of liquor "without the need to independently establish" the existence of a license to use a trade name or related characteristic, or a community of interest. However, this decision was rendered prior to the Missouri Supreme Court's decision in *High Life*. Given the plain language of the franchise statute, specifically the words, "including but not limited to," the Court is not persuaded that the legislature intended to create a franchise whenever there was a commercial relationship between a liquor supplier and distributor. Indeed, MoBev has provided no common sense explanation for why a legislature might believe that such a special protection was necessary from the liquor industry.

Accordingly, the Court finds that to demonstrate a liquor franchise under Missouri law, the criteria in both the general definition and specific definition must be met.

### B. Whether the Parties' Business Relationship is a Franchise

Applying the original franchise definition here raises the following issues: 1) whether there was an oral or written agreement with terms of an ongoing business relationship; 2) whether Shelton licensed to MoBev the use of its "trade name, trademark, service mark, or related characteristic;" and 3) whether the parties engaged in the same community of interest. For the following reasons, the Court finds that the parties' business relationship is not a franchise.

Although the parties dispute the nature of their relationship and the content of their oral agreement, they do not dispute the facts underlying the other two elements of a franchise: license of trademark or related characteristic, and a community of interest. The Court finds that as a matter of law, the facts are insufficient to show either element.

Courts have compared Missouri's franchise statute with that of New Jersey's, and have cited to New Jersey case law in support of their own conclusions. *See, e.g.*, *American Business Interiors, Inc. v. Haworth, Inc.*, 798 F.2d 1135, 1140 n.3 (8th Cir. 1986) (discussing other states' statutory definitions of "franchise" and finding that "[t]he New Jersey statute is closest" to Missouri's, differing primarily in that it does not cover oral agreements). "[A] hallmark of the franchise relationship is the use of another's trade name in such a manner as to create a reasonable belief on the part of the consuming public that there is a connection between the trade name licensor and licensee by which the licensor vouches, as it were, for the activity of the licensee in respect of the subject of the trade name." *Id.* (quoting the "broad" reading of "license" in *Neptune T.V. v. Litton Microwave*, 462 A.2d 595, 598 (N.J. Super. Ct. App. Div. 1983)). Current New Jersey case law has upheld the *Neptune* Court's

11

interpretation of "license." *See Liberty Sales Assoc., Inc. v. Dow Corning Corp.*, 816 F. Supp. 1004, 1009-10 (D.N.J. 1993) (quoting and citing *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 614 A.2d 124, 138-40 (N.J. 1992)) ("'[N]ot every grant of permission to use a trademark in the sale of goods or services is a 'license' within the meaning of the Franchise Act.' . . . The license contemplated by the Act is one in which the franchisee wraps himself with the trade name of the franchisor and relies on the franchisor's goodwill to induce the public to buy.").

Here, although Shelton gave MoBev the logos of some of the beers it imported to aid in MoBev's sale of the products, MoBev did not benefit from Shelton's name such that MoBev could coopt the goodwill and customer recognition provided by it. Indeed, MoBev explicitly states: "[C]ustomers do business with MoBev because they associate MoBev with good products. MoBev salespeople mention the supplier if the supplier has a reputation of carrying good quality products, with the goal of promoting the product." [Doc. # 47, ¶ 26]. MoBev also contends that its "reputation has been damaged" by Shelton's decision to end their relationship because customers have questioned whether "MoBev had done something wrong to cause Shelton Bros. to terminate its relationship with MoBev." [Doc. #47, ¶ 33]. Both of these statements show that far from coopting Shelton's name to advance its business, MoBev promotes the names and products of its suppliers, including Shelton, through MoBev's reputation. That MoBev has a reputation distinct from Shelton's–upon which it relies–indicates that it does not cloak itself with Shelton's goodwill in order to garner sales. Moreover, MoBev never once used Shelton's name in any marketing efforts, did not ask

12

Shelton if it could use its name, and did not receive Shelton's express permission to use its name. That Shelton testified that it would have given MoBev permission does not bear on the Court's analysis. As a matter of law, the Court finds that Shelton did not grant a "license to use a trade name, trademark, service mark, or related characteristic."

MoBev's failure to use Shelton's name or trademarks is also indicative of the lack of a community of interest between MoBev and Shelton. Although there has been minimal discussion by Missouri state courts on this issue, the Court believes that they would "interpret 'community of interest' to mean, at a minimum, either (1) the franchisor benefits from the franchisee's marketing of the franchisor's product or service, or (2) the franchisee benefits from the franchisor's marketing of the product or service." *C & J Delivery, Inc. v. Emery Air Freight Corp.*, 647 F. Supp. 867 (E.D. Mo. 1986). The Court adds, however, that the "benefit" received by either franchisor or franchisee implies more than a sharing of profits. Again, the Court finds instructive discussion of New Jersey's franchise law, which has the same "community of interest" requirement as Missouri. "'The community of interest signalling a franchise relationship . . . . is based on the complex of mutual and continuing advantages which induced the franchisor to reach his ultimate consumer through entities other than his own which, although legally separate, are nevertheless economically dependent upon him.'" *Boyle v. Vanguard Car Rental USA, Inc.*, Civil No. 08-6276 (JBS/KMW), 2009 U.S. Dist. LEXIS 91314, at *19 (D.N.J. Sept. 30, 2009) (quoting *Neptune*, 462 A.2d, at 600-01)). From the foundation laid in *Neptune* and other New Jersey cases, the Third Circuit Court of Appeals generated a two-part test to find a community of interest: "(1) the

13

distributor's investments must have been substantially franchise-specific . . . and (2) the distributor must have been required to make these investments by the parties' agreement or the nature of the business." *Cooper Distrib. Co. v. Amana Refrigeration, Inc.*, 63 F.3d 262, 269-70 (3d Cir. 1995).

Here, the Court finds that the "community of interest" requirement is not met. The sale of Shelton's products account for 1% or less of MoBev's annual sales from 2006 through 2009. This, coupled with MoBev's failure to use Shelton's name in marketing during their entire relationship, fails to show that MoBev's investments were "substantially franchise-specific" or that MoBev was "economically dependent" upon Shelton. That MoBev stocked Shelton's beers in a warehouse along with other beers and hosted two sampling events where Shelton's beers were presented alongside that of other importers, does not alter the Court's conclusion. Indeed, MoBev admits that it and its sales representatives did not focus on developing Shelton. Also, the parties' agreements did not obligate MoBev to invest specifically for the purpose of distributing Shelton's imported beers, nor does MoBev present evidence that the nature of the business required it to make specific investments to distribute Shelton's products.

For the foregoing reasons, the Court finds that a franchise relationship did not exist between the parties.

## III. Conclusion

Accordingly, it is hereby ORDERED that MoBev's motion for partial summary judgment [Doc. # 37] is DENIED and Shelton's motion for summary judgment [Doc. # 35]

is GRANTED.

                                                      s/ Nanette K. Laughrey
                                                      NANETTE K. LAUGHREY
                                                      United States District Judge

Dated: June 17, 2011
Jefferson City, Missouri